# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL TUCKER, et al., individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:20-CV-254-SNLJ |
| GENERAL MOTORS LLC, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

Plaintiffs Michael Tucker and Robert Riddell brought this lawsuit on behalf of themselves and a putative class of similarly situated individuals for claims of breach of warranties, fraud, unjust enrichment, and consumer protection against defendant General Motors LLC ("GM"). Defendant has moved to dismiss [#14]. The motion has been fully briefed.

## I.      Factual Background

For the purposes of this motion to dismiss, the facts alleged in the complaint are presumed true. Plaintiffs each own GM vehicles featuring Generation IV 5.3 Liter V8 Vortec 5300 engines (the "Gen IV engines"). Plaintiffs allege that those engines contain defective piston rings that cause excessive oil consumption. That "Oil Consumption Defect" causes reduced engine lubricity, which, in turn, causes engine damage and malfunction. Plaintiffs allege that GM knew about the defect but failed to disclose it to

the people who bought trucks and SUVs containing the Gen IV 5.3L engines, and GM has refused to offer an effective repair.

Plaintiffs' allegations are materially identical to those asserted in *Sloan, et al. v. General Motors LLC*, No. 16-cv-07244-EMC (N.D. Cal.). That case has proceeded through discovery and a summary judgment motion involving bellwether plaintiffs. *Sloan v. Gen. Motors, LLC*, 2020 WL 1955643, at *52-53 (N.D. Cal. April 23, 2020) ("*Sloan III*"). Plaintiffs here explain they brought their claims in this Court rather than in *Sloan* because GM successfully argued that no additional non-California plaintiffs may assert claims in the *Sloan* action pursuant to *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017).

Plaintiff Michael Tucker is a Missouri resident who purchased a 2013 GMC Sierra in 2013 with a Gen IV engine. Tucker alleges his vehicle started consuming excess oil when it had approximately 75,000 miles on the odometer. Plaintiff Robert Riddell is a Michigan resident who purchased a new 2012 Chevrolet Silverado with a Gen IV engine in 2012. Riddell alleges his vehicle started consuming excess oil after 25,000 to 30,000 miles. Plaintiffs allege that GM was aware of the alleged oil consumption defect, citing GM advertisements and public statements that generally refer to the performance, power, and fuel economy of GM's vehicles, as well as technical service bulletins that GM made available to dealerships. Plaintiffs allege they reviewed window stickers affixed to their vehicles and that they viewed TV commercials. The Class Vehicles came with a 5-year, 100,000 mile New Vehicle Limited Warranty.

Plaintiffs' complaint includes five counts: (I) violation of the Missouri Merchandising Practices Act, (II) breach of express warranty, (III) breach of implied warranty of merchantability, (IV) fraudulent omission, and (V) unjust enrichment. Plaintiffs seek to represent a class of Missouri purchasers and lessees of certain model year 2010-2014 GM vehicles equipped with Gen IV engines ("Class Vehicles"). Plaintiffs claim that they suffered unspecified damages because they "would not have purchased" or "paid too much" for their vehicles due to the alleged non-disclosure of the oil consumption defect. They seek attorneys' fees and costs, restitution, pre- and post-judgment interest, and damages, including punitive damages.

Defendant has moved to dismiss the complaint.

## II.      Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). In addressing a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. *United States ex rel. Ambrosecchia v. Paddock Laboratories, LLC.*, 855 F.3d 949, 954 (8th Cir. 2017). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007) (abrogating the prior "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 555. A complaint must set forth factual allegations which are enough to "raise a right to relief above the speculative level." *Id.* at 555. However, where a court can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. *Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

## III.    Discussion

Defendant moves for summary judgment on all of plaintiffs' counts.

### A.    Express Warranty Claim (Count II)

GM's Limited Warranty promised GM would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. Plaintiffs claim that defendant breached the warranty by failing to repair the Oil Consumption Defect.  Defendant argues that this count for breach of express warranty fails because the alleged Oil Consumption Defect is a design defect not covered by the warranty.

Plaintiffs disagree that the Oil Consumption Defect should be characterized as a design defect. It is generally understood "that defects in material and workmanship refer to departures from a product's intended design while design defects refer to the inadequacy of the design itself." *Bruce Martin Const., Inc. v. CTB, Inc.*, 735 F.3d 750,

753 (8th Cir. 2013). And, where all vehicles are alleged to have the same defect, plaintiffs allege a design defect—not a manufacturing or material defect. *See Freeman v. Toyota Motor Sales, USA, Inc.*, 4:19-CV-02550-SEP, 2020 WL 7041810, at *2 (E.D. Mo. Nov. 30, 2020). Plaintiffs further maintain that the alleged defect "lies in the piston rings and the piston coating," which are materials and thus covered under the warranty. But plaintiffs' allegation ultimately go to the design of the system. Plaintiffs allege GM adjusted in response to early wear of the piston rings by "installing a more robust PVD coated ring during warranty replacements starting in late 2014." The complaint also discusses that the engine's PCV system contributes to oil consumption and engine damage, for instance, by "vacuuming oil from the valvetrain." [#1 at ¶ 80.] The allegations all go to GM's initial design, which plaintiffs allege is problematic across all vehicles with this particular engine. Plaintiffs even allege in their complaint that the "Oil Consumption Defect is a <u>uniform design defect</u> that is related to materials." [#1 at ¶ 228 (emphasis added).] This is effectively an admission that plaintiffs allege a design defect, not a materials defect. Further, plaintiffs allege that GM "abandoned the design flaws" in its "redesigned Generation V" engines. [#1 at ¶ 124.] It is clear that plaintiffs complain of a design defect, not a defect in materials or workmanship.

Regardless, plaintiffs argue that the Limited Warranty's plain language here covers their claim even if it is a design defect. The GM Limited Warranty's coverage provision provides that the warranty "covers repairs to correct <u>any vehicle defect</u>, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials

5

or workmanship occurring during the warranty period." [#1 at ¶ 223 (emphasis added).]

The matter of what the warranty language means has been litigated a number of times. A

recent opinion in *Martell v. General Motors*, No. 3:20cv284-SI, 2021 WL 1840759 (D.

Or. May 7, 2021) explained the parties' disagreement well:

> Plaintiff argues that the text of this clause includes, as it expressly states, "any vehicle defect" except for "slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period." Under Plaintiff's reading, the phrase "related to materials or workmanship" modifies the "normal characteristics of the vehicle" that are excluded from coverage, and "slight noise" and "vibrations" are two examples of such "normal characteristics of the vehicle related to materials or workmanship." Because the Oil Consumption Defect is not a normal characteristic of the vehicle related to materials or workmanship, similar to slight noise or vibrations, Plaintiff argues, that alleged defect is covered by the express warranty and not excluded.

> GM, however, argues that "related to materials or workmanship" does not apply to the phrase or list immediately preceding that phrase, but instead modifies "any vehicle defect." Under this reading, the clause would still exempt "slight noise, vibrations, and other normal characteristics of the vehicle" but the phrase "related to materials or workmanship" would not be read as limited to the modification of those items. GM argues that to read the warranty as Plaintiff contends would conflict with what a reasonable consumer would expect an express warranty to cover, that punctuation should not be considered when interpreting a contract, that GM's reading has been adopted by most courts considering GM's various express warranties, and that Plaintiff's reading causes the warranty to extend indefinitely.

*Martell*, 2021 WL 1840759 at *6. The court in *Martell* went on to endorse plaintiff's

reading of the limited warranty and concluded "that the phrase 'related to materials or

workmanship' modifies the phrase 'other normal characteristics of the vehicle' or,

possibly, the longer phrase 'slight noise, vibrations, or other normal characteristics of the

vehicle.'" *Id.* Defendant submits that the *Martell* court's "overly strict grammatical

interpretation is not in line with Missouri law or reasonable consumer expectations."

[#28 at 1.] Indeed, several other courts have rejected the *Martell* court's interpretation.

*See Szep v. Gen. Motors LLC*, 491 F. Supp. 3d 280, 291-92 (N.D. Ohio 2020); *Harris v. Gen. Motors LLC*, No. C20-257, 2020 WL 5231198, at *3 (W.D. Wash. Sept. 2, 2020); *Sloan v. Gen. Motors LLC*, No. 16-cv-07233,2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) ("*Sloan I*"). Looking at each of those cases, *Szep*, *Harris*, and *Sloan I* each assumed, without discussion, that the warranty covers "repairs to correct any vehicle defect…related to materials or workmanship occurring during the warranty period." 491 F.Supp.3d at 291; 2017 WL 3283998 at *8; *see also* 2020 WL 5231198 at *3. The cases then went on to conclude that the warranties, couched in that way, did not cover design defects. Although defendant states that its authorities "expressly rejected" plaintiffs' and the *Martell* court's conclusion, it is not clear whether the parties in those cases even raised the language of the warranty.

Where the matter of the warranty's construction is substantively discussed, the courts appears to adopt the reading advocated by plaintiff and *Martell*. *See McKee v. Gen. Motors, LLC*, 376 F. Supp. 3d 751, 757 (E.D. Mich. 2019) and *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173 (S.D. Fla. 2019). Those cases rejected defendant's argument here and held that the Warranty covers any vehicle defect except for "normal characteristics of the vehicle related to materials or workmanship." Those courts found that defendant's argument impermissibly attempts to add a comma between "vehicle" and "related." Defendant argues that the result of such a reading is not in accordance with

consumer expectations, which is that the warranty would at least cover defects in "normal characteristics of the vehicle related to materials or workmanship."  But it is unclear why defendant expects the consumer to expect something other than what the plain English of the warranty promises. This Court also disagrees with defendant that plaintiffs' reading requires the warranty to extend indefinitely.  The "warranty period" is well-defined in other areas of the contract, and it may be read in its clause "occurring within the warranty period" without rendering the warranty provision absurd as defendant insists.  *See Martell*, 2021 WL 1840759 at *9.

Even to the extent the warranty is ambiguous, any ambiguity must be construed against the drafter.  *See Marion v. Hazelwood Farms Bakeries, Inc.*, 969 F. Supp. 540, 543 (E.D. Mo. 1997).  It thus appears that the warranty as written may cover plaintiffs' alleged Oil Consumption Defect because the warranty covers "any vehicle defect," and the exclusions do not apply here.

All that said, defendant argues that plaintiffs' express warranty claim is barred because they did not give pre-suit notification of their claims in accordance with the warranty. Missouri law requires that the "buyer must within a reasonable time after he discovers or should have discovered any breach [of warranty] notify the seller of breach or be barred from any remedy." § 400.2–607(3)(a) RSMo. *See also Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. *banc* 2010) (plaintiff must establish that he "notified the seller of the nonconformity in a timely fashion" to assert express warranty claim). The complaint does not allege that plaintiffs brought their vehicles into a

GM-authorized dealership for repair or diagnosis nor that they otherwise contacted

defendant. The complaint suggests defendant was provided notice through other lawsuits

and its own engineering knowledge, but reliance on that argument contravenes the plain

language of the statute (requiring that "the buyer must….notify"). *See Gillan v. Wright*

*Med. Tech. Inc.*, 396 F. Supp. 3d 844, 849 (E.D. Mo. 2019) ("The buyer of the product

must give some type of a pre-suit notice to the seller in order to state an express breach of

warranty claim."); *Budach v. NIBCO, Inc.*, 2:14-CV-04324, 2015 WL 3853298, at *4

(W.D. Mo. June 22, 2015) (rejecting argument that manufacturer had notice from

previously filed lawsuit with similar allegations). Accordingly, the express warranty

claim must thus be dismissed.

> **B.      Implied Warranty of Merchantability Claim (Count III)**

"The implied warranty of merchantability arises by operation of law and does not

impose a general requirement that goods precisely fulfill the expectation of the buyer.

Instead, it provides for a minimum level of quality." *In re Gen. Motors Corp. Anti-Lock*

*Brake Products Liab. Litig*., 966 F. Supp. 1525, 1533 (E.D. Mo. 1997) (internal quotation

omitted), *aff'd sub nom*. *Briehl v. Gen. Motors Corp*., 172 F.3d 623 (8th Cir. 1999).

Plaintiffs fail to state a claim for breach of implied warranty if their allegations do not

show that the vehicles are unfit for providing transportation. *Id.* "[W]here a car can

provide safe, reliable transportation[,] it is generally considered merchantable." *Id.*

(quotation omitted). The implied warranty of merchantability "clearly does not

encompass consumer expectations that a product will hold its value." *Id.* (quoting

*Carlson v. General Motors Corp*., 883 F.2d 287, 298 (4th Cir. 1989)). Plaintiffs concede

they drove their vehicles for years and for thousands of miles without incident and

without noticing any excess oil consumption. They do not allege they have stopped

driving their vehicles or that they are unsafe or unfit for transportation.  Courts routinely

dispose of implied warranty claims where they conclude the alleged defect does not

render vehicles unfit as a matter of law. Such alleged defects include, for example,

- Shattering of a panoramic sunroof where plaintiff drove car without incident for a  year and continued to drive the vehicle after paying for repair.  *Anderson v. Ford Motor Co*., 17-03244-CV-S-BP, 2020 WL 1853321, at *7 (W.D. Mo. Feb. 14, 2020); *see also Elfaridi v. Mercedes-Benz USA, LLC*, 4:16 CV 1896 CDP, 2018 WL 4071155, at *10 (E.D. Mo. Aug. 27, 2018).

- Replacement of brake pads and rotors after plaintiff was able to drive his car for 20,618 miles and for about two years.  *Sheris v. Nissan N. Am. Inc.*, CIV. 07-2516 (WHW), 2008 WL 2354908, at *5 (D.N.J. June 3, 2008).

- Anti-lock braking system performing counter intuitively and increases stopping distances.  *Anti-Lock Brake Products Liab. Litig*., 966 F. Supp. at 1533.

- Premature failure of heat pump after functioning as intended for four years. *Williams v. United Techs. Corp*., No. 2:15-CV-04144-NKL, 2015 WL 7738370, at *6 (W.D. Mo. Nov. 30, 2015).

In sum, a product does not fall short of the "minimum level of quality" "standard simply because it experiences periodic problems." *Id.*

Nonetheless, plaintiffs rely on *Sloan v. General Motors*, 287 F. Supp. 3d 840, 879 (N.D. Cal. 2018) ("*Sloan II*"), for the proposition that a jury should decide whether the Oil Consumption Defect was a safety defect that affects operability. [#25 at p. 6.] Plaintiffs acknowledge that case was decided under the "implied warranty laws of California, North Carolina, and Texas." *Id.* Notably, the *Sloan* court initially granted GM's motion to dismiss the implied warranty claims in *Sloan I* because the plaintiffs "concede that all of the cars at issue have a functioning oil level gauge that can provide advance warning when oil levels are low. There is thus no credible risk of sudden engine failure because of the excess oil consumption." *Sloan I*, 2017 WL 3283998 at *9. On GM's motion to dismiss a subsequent complaint, however, the court held that a "safety risk has been plausibly alleged for purposes of Rule 12(b)(6)" in light of allegations of "engine damage, fouled spark plugs, engine misfires, emission of white smoke, and so on." *Sloan II*, 287 F. Supp. 3d at 879.

Plaintiffs have made similar allegations of safety risks here. They allege the oil consumption causes a loss of lubricity leading to engine damage and potentially engine stall, and that the defect separately fouls spark plugs resulting in power loss. [#1 at ¶¶ 14, 15, 51-103, 133-52.] Regardless, it appears that, in Missouri, "a vehicle is not deemed unsafe for transportation by the off-chance that one of its parts will malfunction." *Anderson*, 2020 WL 1863321 at *7. "This is demonstrated by the fact that Plaintiff

continues to drive the [vehicle] today. … A vehicle might be considered unsafe if one of its parts malfunctions at such a high rate that a reasonable person would not feel safe in it." *Id.*

Although the Court is skeptical of the merits of the implied warranty claim, it is unnecessary to rule definitively on the matter because the implied warranty claim fails for lack of notice, as already discussed above, and for timeliness.  A breach of implied warranty of merchantability claim is subject to a four-year statute of limitation.  § 400.2-725 RSMo.  The period starts to run from the date of delivery.  *Id.*   Plaintiffs purchased their vehicles in 2012 and 2013 but did not bring their claims until November 2020. Plaintiffs suggest their claims were tolled by claims brought in the *Sloan* action, but no Missouri plaintiff joined the case until August 31, 2017.  Although plaintiffs do not allege what month plaintiff Tucker purchased his vehicle in 2013, they do not attempt to argue that the four-year statute of limitations had not already run as of August 31, 2017.

Although plaintiffs assert the limitations period should be equitably tolled,  "To constitute concealment of a cause of action within the general rule tolling the statute of limitations on that ground the concealment must be fraudulent or intentional and, ... there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." *Owen v.. General Motors Corp*., 533 F.3d 913, 919–20 (8th Cir. 2008) (quotation omitted).   Plaintiffs allege no facts showing that defendant took any "affirmative" actions that were "designed to prevent" the discovery of plaintiffs'

cause of action or prevent their filing of this lawsuit. *Id.*; *DeCoursey v. Am. Gen. Life Ins. Co.*, 822 F.3d 469, 475 (8th Cir. 2016).

The breach of implied warranty claim will thus be dismissed.

### C. Fraudulent Omission Claim (Count IV)

Plaintiffs claim defendant fraudulently failed to disclose the Oil Consumption Defect. Defendant argues that the claim is barred by the economic loss doctrine. "The economic loss doctrine prohibits a commercial buyer of goods 'from seeking to recover in tort for economic losses that are contractual in nature.' " *Dannix Painting, LLC v. Sherwin–Williams Co.*, 732 F.3d 902, 905–06 (8th Cir.2013) (citing *Autry Morlan v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo.App.S.D.2010)). "'[D]istinguished from harm to person or damage to property,' economic, or commercial, 'loss includes cost of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use.' " *Id.* at 905 (internal quotations omitted) (quoting *Groppel Co. v. U.S. Gypsum Co.*, 616 S.W.2d 49, 55 n. 5 (Mo. Ct. App. 1981)). Economic loss also includes " 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' " *Id.* (internal quotations omitted).

Plaintiffs suggest that the economic loss doctrine does not apply to their fraudulent non-disclosure case despite the presence of a contract. However, even if plaintiffs' claim could be couched as a fraudulent inducement claim, the "Eighth Circuit has held that where a representation concerns the quality or safety of the goods sold, the economic loss

doctrine bars the fraud claims because they are 'substantially redundant' with warranty claims." *Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd*., 181 F. Supp. 3d 618, 639 (E.D. Mo. 2016) (quoting *Marvin Lumber and Cedar Co. v. PPG Industries, Inc*., 223 F.3d 873, 885 (8th Cir. 2000)). Plaintiffs' breach of warranty and fraudulent omission claims are both predicated on the allegation that defendant failed to disclose the Oil Consumption Defect. The fraudulent concealment claim is thus barred by the economic loss doctrine and will be dismissed.

### D.      Missouri Merchandising Practices Act (Count I)

Plaintiffs bring a claim under the Missouri Merchandising Practices Act ("MMPA"). A properly pleaded MMPA claim requires plaintiff allege the defendant "(1) the defendant used or employed a deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or a concealment, suppression, or omission of a material fact; (2) the fraudulent act occurred in connection with the sale or advertisement of merchandise in trade or commerce; (3) the fraudulent act resulted in an ascertainable loss of money or property; and (4) the loss occurred to a person who purchased or leased merchandise primarily for personal, family, or household purposes." *Gardner v. Bank of Am., N.A.*, 466 S.W.3d 642, 647 (Mo. Ct. App. 2015). The MMPA "supplements the definition of common law fraud, eliminating the need to prove an intent to defraud or reliance." *Ullrich v. CADCO, Inc.*, 244 S.W.3d 772, 777–78 (Mo. App. E.D. 2008). However, the pleading requirements of Rule 9(b) apply to claims based on state consumer fraud statutes such as the MMPA. *Anti-Lock Brake Products Liab. Litig.*, 966

F. Supp. at 1536, *aff'd sub nom. Briehl*, 172 F.3d 623. Some plaintiffs cite *Ullrich* and its

progeny as standing for the proposition that Rule 9(b)'s particularity requirement does

not apply to MMPA claims, but *Ullrich* has "no relevance to the question of whether

Rule 9(b) of the Federal Rules of Civil Procedure applies, or what level of particularity

Rule 9(b) demands, but only to the issue of what substantive elements Rule 9(b) would

apply to." *Khaliki v. Helzberg Diamond Shops, Inc.*, 4:11-CV-00010-NKL, 2011 WL

1326660, at *2 (W.D. Mo. Apr. 6, 2011).

Defendant argues that plaintiffs fail to plead their MMPA claim with sufficient

particularity in that plaintiffs did not specifically allege deceptive conduct and

causation—e.g., that they personally encountered, relied on, or purchased their vehicles

as a result of any specific GM advertising or statements. As discussed above, though,

reliance is not a required element. And the complaint does allege that, with respect to

plaintiff Tucker,

> Prior to purchasing his 2013 Sierra, Mr. Tucker spoke with a sales
> representative at Barley Automotive, saw commercials for the 2013 GMC
> Sierra that promoted the truck's reliability and durability, and saw a
> Monroney sticker on the vehicle at the time of purchase. GM did not disclose
> the Oil Consumption Defect through any of these avenues.

[#1 at ¶ 30.] With respect to plaintiff Riddell,

> Prior to purchasing his 2012 Silverado, Mr. Riddell spoke with a sales
> representative at ELCO Chevrolet, saw commercials for the 2012 Chevrolet
> Silverado that promoted the truck's reliability and durability, and saw a
> Monroney sticker on the vehicle at the time of purchase. GM did not disclose
> the Oil Consumption Defect through any of these avenues.

15

[#1 at ¶ 39.] . In addition, plaintiffs allege defendant omitted the Oil Consumption Defect in connection with its advertising, promotion, and sale of the Class Vehicles. They also allege they were damaged by the omissions because, had GM disclosed the Defect, they would not have purchased their Class Vehicles or would have paid less for them.

But even if those general allegations could satisfy Rule 9(b)'s particularity requirement, it has been repeatedly held that advertising constituting "mere puffery" cannot form the basis of an MMPA claim: "It is appropriate for a court to determine 'whether an alleged misrepresentation is a statement of fact or mere puffery' on a Rule 12(b)(6) motion to dismiss." *Anti-Lock Brake Products Liab. Litig.*, 966 F. Supp. at 1534. In the *Anti-Lock Brake Products* litigation, this Court dismissed fraud claims against GM based on "national advertisements, press releases and promotions" that alleged "created a false impression that the [antilock braking system was] 'safe and reliable.'" *Id.* This Court held that fraud could not be based on such statements because they were mere "puffery." *Id.* Plaintiffs cite *Hawkins v. Nestle U.S.A., Inc.*, 309 F. Supp. 3d 696, 703 (E.D. Mo. 2018) to support their argument that they have properly pleaded their claim, but that case involved allegations that the defendant used oversized packaging to deceive its customers into believing they were buying more. Such "deceptive packaging" is not the same as mere puffery present in advertisements. Count I will be dismissed.

### E.    Unjust Enrichment (Count V)

Defendant maintains that plaintiffs cannot pursue both their warranty (contract-based) claim and their equitable claim for unjust enrichment. *See Howard v. Turnbull*,

316 S.W.3d 431, 436 (Mo. App. 2010) ("If the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract."); *Flynn v. CTB, Inc.*, 1:12-CV-68 SNLJ, 2013 WL 28244, at \*6 (E.D. Mo. Jan. 2, 2013) (dismissing unjust enrichment claim and holding "plaintiffs' remedies are limited to those under the warranty.").

Plaintiffs insist they bring these claims in the alternative. "A plaintiff is certainly entitled to bring an unjust enrichment claim as an alternative ground for relief pursuant to Rule 8(e)(2) of the Federal Rules of Civil Procedure. But where the claim is based in part on the express terms of the warranty, it arises out of the warranty contract and must be dismissed." *Elfaridi v. Mercedes-Benz USA, LLC*, 4:16 CV 1896 CDP, 2018 WL 4071155, at \*12 (E.D. Mo. Aug. 27, 2018); *see also Affordable Communities of Missouri v. Fed. Nat. Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013) (affirming dismissal of unjust enrichment claim where case depended on interpretation of express contract). That is the case here. Plaintiffs had a remedy for breach of contractual warranty, but, as noted, they did not provide the requisite notice to take advantage of the warranty.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [#14] is GRANTED.

Dated this __29th__ day of June, 2021.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE